**MICHAEL A. CISNEROS**
ATTORNEY AT LAW
50 WEST LEMON AVENUE
SUITE 12
**MONROVIA, CALIFORNIA 91016**
(626) 359-3692  FAX: (626) 359-3728

**Michael A. Cisneros, SBN 105483**
e-mail:  mcisneros@mac.com

Attorneys for Debtors-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | **Chapter 11** |
| JAMES N. KNOWLES and SARA KNOWLES | **CASE NO. 2:10-bk-11762ER** |
| | **DEBTORS' DISCLOSURE STATEMENT DESCRIBING DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION** |
| Debtors-in-Possession | **Disclosure Statement Hearing** |
| | **Date:** September 15, 2010 |
| | **Time:** 10:00 a.m. |
| | **Place:** Courtroom "1568" |
| | **Plan Confirmation Hearing** |
| | **See Disclosure Statement for Voting and Objecting Procedures** |
| | **Date:** |
| | **Time:** (To be Set) |
| | **Place:** Courtroom "1568" |

1

**I.**

**INTRODUCTION**

James N. Knowles and Sara Knowles are the Debtors in a Chapter 11 bankruptcy case, commenced on January 18, 2010 by their filing of a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq.  Chapter 11 allows the Debtors, and under some circumstances, creditors and others parties in interest, to propose a plan of reorganization ("Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtors are the parties proposing the Plan sent to you in the same envelope as this document.  THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a combined liquidating and reorganizing plan. In other words, the Proponents seek to accomplish payments under the Plan by selling one or more parcels of real property owned by them and using their post-confirmation earnungs to retain the others.  The Effective Date of the proposed Plan is ten (10) days after entry of an Order Confirming this Plan of Reorganization.

A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)    WHO CAN VOTE OR OBJECT,**

**(2)    WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed) AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD RECEIVE IN LIQUIDATION,**

**(3)    THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,**

**(4)    WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,**

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

**(5)    WHAT IS THE EFFECT OF CONFIRMATION, AND**

**(6)    WHETHER THIS PLAN IS FEASIBLE.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court ("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about the Plan.  Any party can now solicit votes for or against the Plan.

B.    Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

**THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTORS AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.**

1.    Time and Place of the Confirmation Hearing

The hearing where the Court will determine whether or not to confirm the Plan will take place on              , at        .m., in Courtroom "1568", United States Bankruptcy Court, Central District of California, 255 East Temple Street, Los Angeles, California, 90012.

2.    Deadline For Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to Michael A. Cisneros, Attorney at Law, 50 West Lemon Avenue, Suite 12, Monrovia, CA 91016.

Your ballot must be received by              or it will not be counted.

///

///

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692  FAX: (626) 359-3728

3

1    3.    Deadline For Objecting to the Confirmation of the Plan

2    Objections to the confirmation of the Plan must be filed with the Court and served upon

3    Michael A. Cisneros Attorney at Law, 50 West Lemon Avenue, Suite 12, Monrovia, CA 91016, by .

4    4.    Identity of Person to Contact for More Information Regarding the Plan

5    Any interested party desiring further information about the Plan should contact Michael A.

6    Cisneros Attorney at Law, 50 West Lemon Avenue, Suite 12, Monrovia, CA 91016, Telephone

7    number (626) 359-3692.

8    C.    Disclaimer

9    The financial data relied upon in formulating the Plan is based on Debtors' books and records.

10   The information contained in this Disclosure Statement was provided by the Debtors. The Plan

11   Proponents represent that everything stated in the Disclosure Statement is true to the Proponents' best

12   knowledge. The Court has not yet determined whether or not the Plan is confirmable and makes no

13   recommendation as to whether or not you should support or oppose the Plan.

## II.

## BACKGROUND

16   A.    Description and History of the Debtors:

17   James N. Knowles and Sara Knowles ("Debtors") are individuals who, as many other people,

18   tried to take advantage of the Southern California real estate market and the creative financing being

19   offered four to six years ago. Like many other individuals and business, they looked at the real estate

20   market as an ever growing and profit making opportunity and, like many individuals and business,

21   they were caught by surprise when the rosy Southern California real estate market collapsed.

22   The Debtors have lived in Pasadena all of heir lives and are the parents of two young boys. In

23   the 1990s and early 2000s, the Debtors and their family resided at 2006 Newport Avenue, Pasadena,

24   CA. The Debtors had purchased this property in May of 1992 and ultimately sold it in February of

25   2005. In May of 2003, the Debtors moved into the real property located at 372 Laun Street,

26   Altadena, which belonged to Mr. Knowles' grandmother. The Laun property was ultimately granted

27   over to the Debtors.

28   ///

MICHAEL A. CISNEROS, Attorney at Law
50 West Lemon Avenue, Suite 12
Monrovia, California 91016
(626) 359-3692  FAX: (626) 359-3728

4

1   B.     Principals/Affiliates of Debtor's Business:

2      As set forth above James and Sara Knowles are individuals.  James Knowles is currently

3 employed as a County Planner with the County of Los Angeles Planning Department.  Sara Knowles

4 is working as a Home Health Care Nurse.

5   C.     Management of the Debtor Before and After the Bankruptcy:

6      As individuals, the Debtors have managed their own financial affairs, hiring professionals

7 only when necessary.  Post-confirmation, the Debtors will continue to mange their affairs.

8   D.     Events Leading to Chapter 11 Filing:

9      After having sold the 2006 Newport Avenue property, the Debtors paid off all of their secured

10 and unsecured debt.  In or around 2005, the Debtors decided to refinance the Laun property and

11 venture into the realm of real estate investment.  The Debtors borrowed approximately $340,000.00

12 on the Laun Property, obtaining a negative amortization loan, which provided for multiple interest

13 and principal adjustments.  Although the Debtors tendered the minimum payments each month, the

14 principal amount owing continued to increase.

15      With the proceeds garnered from the refinance of the Laun property, the Debtors purchased

16 the real property located at 1224 Corson Street, Pasadena, CA.  The Corson property was improved

17 by a 2000 square foot, four (4) unit apartment building with a four car garage and a common laundry

18 area.  The purchase price was $949,000.00, which required that the Debtors finance $854,100.00 and

19 deposit approximately $100,000.00 to complete the purchase.

20      The Debtors then bought their second investment property located at 2020 Newport Avenue,

21 Pasadena, CA 91103.  The property is a single family residence with three bedrooms and two baths.

22 The Debtors put ten percent (10%) down when they purchased the property. The first mortgage was a

23 negative amortization loan and the second mortgage was an equity line of credit.  The Newport

24 property is being rented out for $1,700.00 a month.

25      During the Debtors' first year of owning the properties, the rents were sufficient to service all

26 the debt.  However, when the first year property taxes came due, the Debtors did not have the funds

27 necessary to pay, thus they used their credit cards to pay.  This started a spiral downward.

28   ///

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692  FAX: (626) 359-3728

5

1    The Debtors' financial situation became worse due to many factors: (1) Ms. Knowles had to

2 close her business with her sister, eliminating income, (2) Two of the tenants occupying the

3 apartments on Corson moved out and one of the apartments remained vacant for almost 8 months and

4 the third was vacant for almost 4 months. These factors impeded the Debtors ability to make the

5 monthly mortgage payments on their investment properties. The adjustable rate mortgages continued

6 to adjust up and the monthly payments continued to increase.

7    The mortgage on the Newport Property continued to increase and the payment was more than

8 the property was generating on a monthly basis. Ultimately, the Debtors were unable to pay the

9 mortgages.

10    Another negative factor in the Debtors financial situation was their credit card debt. The

11 Debtors drew money off of their credit cards, and obtained a loan, totaling $35,000.00 to help Mr.

12 Knowles' brother and sister-in-law with legal matters and to help them with some personal loans. The

13 Debtors also lent $10,000.00 to a friend, Oscar Monroy, and $3,500.00 to Gary Tharp. They have not

14 received any of the money back. The total amount loaned out was $48,500 in credit card debt and

15 loans. The Debtors started to use credit cards to pay off credit cards.

16    Finally the Debtors were able to rent one of the vacant units on Corson, but because of the

17 downturn of the economy they had to rent the unit for $1,190.00 instead of $1,300.00. They also had

18 to provide the new tenant with one month's free rent to motivate the move in. Almost immediately,

19 another tenant moved out. Two units remained vacant. As the economy worsened, the Debtors'

20 tenants began to renegotiate their rental terms, demanding lower rents or else they would move out.

21 In order to keep tenants and cash flow from the building, the Debtors agreed to lower the rent to

22 $1,190.00. Finally the Debtors rented the last two apartments one for $1,190.00 and the one bedroom

23 with the bonus room for $1,365.00 plus exclusive rights to the back yard area. Both were given rental

24 concessions to get them in. The monthly income when the Debtors' first rented the apartments was

25 $5,365.00.    Currently, the Corson property generates only $4,935.00, a reduction of $430.00 per

26 month. Because of the reduced cash flow and the Debtors' inability to maintain payments on the

27 properties, both investment properties went into foreclosure.

28 ///

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

6

Disclosure Statement

1    In order to alleviate their debt problems, the Debtors filed a Voluntary Petition under Chapter

2    7.    At the time of filing their Chapter 7 Petition, the Debtors' credit card debt amounted to

3    approximately $65,000.00.

4    Prior to filing for Chapter 7 relief and specifically in December of 2008 the Debtors requested

5    a loan modification for the property located at 372 Laun Street. The request was made because the

6    Debtors' mortgage amount continued to increase.    Despite the timely submission of financial

7    information, hardship letters and everything request by Washington Mutual (and now Chase Bank) no

8    action has been taken. The Debtors were constantly told that Washington Mutual/Chase was working

9    on the modification.

10    On July 16, 2009 Ms. Knowles lost her job with Modern Support Services, requiring her to

11    collect unemployment benefits.  She has now found a position as the personal home health care nurse

12    for an individual

13    In October 2009 the Debtors requested a loan modification with GMAC for both investment

14    properties. GMAC denied the modification on the apartment building located at 1224 Corson Street,

15    due to insufficient income. They were advised by GMAC to sell the real property.

16    On December 23, 2009, the Debtors received several notices from the foreclosing trustee that

17    the property at 2020 Newport would be sold on January 21, 2010, even though their loan

18    modification request was still pending. Upon inquiry, the Debtors were told that the property was

19    being sold and they were asked if the property was being occupied, and if so, by whom. The Debtors

20    were then advised that the Bank was still working on the modification. In order to preserve the real

21    estate assets they owned, the Debtors elected to file for relief under Chapter 11 and try to reorganize

22    their financial problems in order to recoup some of their investment in the properties on Corson and

23    Newport.

24    E.    Significant Events During the Bankruptcy

25    1.    Bankruptcy Proceedings:

26    The Debtors filed for relief under Chapter 11 on January 18, 2010.  Since said date the Debtor

27    have been, and continue to be, Debtors-in-Possession.

28    ///

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692  FAX: (626) 359-3728

7

1  The Court has approved the employment of Michael A. Cisneros, Attorney at Law, as General

2  Bankruptcy Counsel for the Debtors-in-Possession by Order filed on March 29, 2010.

3  In light of the fact that the Corson and Newport properties generate income and the secured

4  creditors having an interest in the rents, issues and profits generated by the properties, a Motion for

5  Authority to Use Cash Collateral was filed on March 12, 2010, and a hearing was set on shortened

6  notice for March 16, 2010. The Court approved the Debtors' interim use of the cash collateral, and

7  has continued the hearing from time to time, with a hearing currently set for August 5, 2010.

8  The Court issued an Order to Show Cause as to Why the Debtors' Should Not Receive a

9  Discharge. The Order to Show Cause was issued in light of the fact that the Debtors had obtained a

10  Chapter 7 Discharge in 2009. The Court issued an Order Denying a Discharge on April 29, 2010.

11  Most recently, the Debtors have filed a series of Motions, which included a Motion to Value

12  Collateral and Determine Secured Status of Creditors on the Newport Property; a Motion to Value

13  Collateral and Determine Secured Status of Creditors on the Corson Property; and a Motion for

14  Authority to Sell, Free and Clear of Liens, the Corson Property. These Motions were initially set for

15  hearing on July 22, 2010, however, by agreement of counsel, the hearings were continued to August

16  5, 2010.

17  The Debtors are current in the requirements of the Office of the United States Trustee.

18  However, the Debtors had fallen behind in filing their Operating Reports and an agreement was

19  reached with the U.S. Trustee that they would remain in compliance or else a Declaration of Default

20  could be filed and this case dismissed.

21  Currently, there are no adversary proceedings or creditor motions pending.

22  2.      Other Legal Proceedings

23  The Debtors are continuing to negotiate with their secured creditors to authorize the sale of

24  the Corson property and to agree to the avoidance of the liens for which no value in the real property

25  exists.

26  ///

27  ///

28  ///

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
Monrovia, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

8

1      3.      Actual and Projected Recovery of Preferential or Fraudulent Transfers

2      No value is estimated to be realized from the recovery of fraudulent and preferential transfers.

3  The Debtors have reviewed their transactions and have concluded that no such claims for relief exist

4  in this estate.

5      4.      Procedures Implemented to Resolve Financial Problems

6      To attempt to fix the problems that led to the bankruptcy filing, Debtors have elected to sell

7  the Corson property, which, although it will eliminate some cash flow for the estate, it will also

8  eliminate the negative financial drain imposed by the payments to secured creditors. James Knowles

9  has enrolled in classes with a local Real Estate Brokerage firm to make use of his Real Estate

10  Salespersons license, which should supplement his income generated from his employment with the

11  County of Los Angeles.

12      Sara Knowles has found a private client who now employs her as a Home Health Care Nurse.

13  This has eliminated the peaks and valleys income map experienced by the Debtors over the past few

14  years.

15      Repairs have been made to the Newport property and the Debtors are investigating converting

16  the house to an assisted living facility. Currently the Debtors are renting out the Newport Property

17  and expect that it will sustain itself under the terms of the Debtors' Plan of Reorganization.

18      5.      Current and Historical Financial Conditions

19      The Debtors are mainly wage earners. James Knowles generates $5,100.00, per month net

20  income from his income as a Planner with the County of Los Angeles. Sara Knowles generates

21  $3,000.00, per month as a private Home Health Care worker.

22      Neither the Laun Street property nor the Newport Avenue property have equity, meaning the

23  Debtors cannot use any equity off these properties to fund their Plan. The only other income

24  available to the Debtors is the income generated from the Newport Avenue property in the amount of

25  $1,700.00 per month.

26      The Debtors' monthly living expenses amount to $6,000.00 (inclusive of the payment on the

27  Laun Property and to Wyndham), leaving them with a surplus each month of $2,100.00. It is from

28  this surplus that the Debtors will fund their Plan of Reorganization.

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

1    The identity and fair market value of the estate's assets are listed in Exhibit A.  See also the

2    Debtor's financial history set forth in Exhibit B.

3    ### III.

4    ### SUMMARY OF THE PLAN OF REORGANIZATION

5    A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan

6        As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes

7    according to their right to priority.  The Plan states whether each class of claims or interests is

8    impaired or unimpaired.  The Plan sets forth the treatment each class will receive.

9    B.    Unclassified Claims

10        Certain types of claims are not placed into voting classes; instead they are unclassified.  They

11   are not considered impaired and they do not vote on the Plan because they are automatically entitled

12   to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has <u>not</u>

13   placed the following claims in a class.

14        1.    Administrative Expenses

15        Administrative expenses are claims for the costs or expenses of administering the Debtors'

16   Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all

17   administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to

18   a different treatment.

19        The following chart lists <u>all</u> of the Debtor's §507(a)(1) administrative claims and their

20   treatment under the Plan (see Exhibit F for detailed information about each administrative expense

21   claim):

| Name | Amount Owed | Treatment |
|---|---|---|
| Michael A. Cisneros, Attorney at Law | $15,000.00 | Paid in full on the effective of the Plan |
| Jeff Curtis and Keller Williams Realty | 6.00% of the gross sales price of any real property sold by the Debtors' prior to or after Plan Confirmation and paid from said sale proceeds | Paid in full from the sale proceeds generated from the sale of the Corson Property upon the closing of escrow and after approval by the Court or upon closing of escrow after the effective date of the Plan. |

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692  FAX: (626) 359-3728

Disclosure Statement

| Clerk's Office Fees | unknown | Paid in full on Effective Date |
| Office of the U.S. Trustee Fees | $650.00 (est.) | Paid in full on Effective Date |
| TOTAL | $56,450.00 | |

**Court Approval of Fees Required:**

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated above, the Debtors will need to pay $56,450.00 (of which $40,800.00 will be paid from the Corson Property sale proceeds) worth of administrative claims on the Effective Date of the Plan unless the claimant has agreed to be paid later or the Court has not yet ruled on the claim. As indicated elsewhere in this Disclosure Statement, Debtors will have $50,000.00 of cash on hand on the Effective Date of the Plan. The source of this cash will be the collection of rents, the sale of the Corson property and the Debtors' post-petition earnings.

2.    Priority Tax Claims:

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8). The Code requires that each holder of such a §507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years form the date of the assessment of such tax.

The following chart lists all of the Debtors' Section 507(a)(8) priority tax claims and their treatment under this Plan:

| Description | Amount Owed | Treatment | |
|---|---|---|---|
| None | $0.00 | | |

C.    Classified Claims and Interests:

1.    Classes of Secured Claims:

Secured claims are claims secured by liens on property of the estate. The following chart lists all classes containing Debtors' secured pre-petition claims and their treatment under this Plan:

///

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692  FAX: (626) 359-3728

11

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

| CLASS | DESCRIPTION | INSIDERS: | IMPAIRED Yes | TREATMENT | |
|---|---|---|---|---|---|
| 1 | Secured claim of: JP Morgan Chase Bank, N.A. | No | Yes | Payment interval: | Monthly |
| | | | | Payment amount | $2,500.31 |
| | Collateral description: Real property located at 372 Laun Street, Altadena, CA | | | Balloon payment | None |
| | | | | Begin date | 10/1/10 |
| | | | | End date | 9/30/40 |
| | Collateral value: $415,000.00 | | | Interest rate: | 5.25% |
| | Priority of security int. First Deed of Trust | | | Total payout | 100% |
| | | | | Treatment of Lien | unimpaired |
| | Principal owed: $450,411.25 | | | | |
| | Pre-pet. arrears: None | | | | |
| | Post-pet. arrears None | | | | |
| | Total claim amount: $452,787.47 | | | | |
| | Secured claim of: GMAC Mortgage, LLC. | No | Yes | Payment interval: | Monthly |
| | | | | Payment amount | $1,656.61 |
| | Collateral description: Real property located at 2020 Newport Ave., Pasadena, CA | | | Balloon payment | None |
| | | | | Begin date | Effective date |
| | | | | End date | 10/1/40 |
| | Collateral value: $300,000.00 | | | Interest rate: | 5.25% |
| | Priority of security int. First Deed of Trust | | | Total payout | 100% of secured amount of creditors' debt. |
| | Principal owed: $364,000.00 | | | | |

12

| | | | | | |
|---|---|---|---|---|---|
| Pre-pet. arrears: $35,867.38<br><br>Post-pet. arrears $10,802.46<br><br>Total claim amount: $419,598.53 | | | | Treatment of Lien | Lien to be stripped down to the fair market value of the real property of $300,000, with the secured portion paid pursuant to the terms of this Plan. |
| Secured claim of: GMAC Mortgage, LLC<br><br>Collateral description: Real property located at 1224 Corson St., Pasadena, CA<br><br>Collateral value: $680,000.00<br><br>Priority of security int. First Deed of Trust<br><br>Principal owed: $797,085.74<br><br>Pre-pet. arrears: $77,445.45<br>Post-pet. arrears $23,858.16<br><br>Total claim amount: $866,721.22 | No | Yes | Payment interval:<br><br>Payment amount<br><br>Balloon payment<br><br>Begin date<br><br>End date<br><br>Interest rate:<br><br>Total payout | None<br><br>$634,200<br><br>$634,200<br><br>escrow closing<br><br>escrow closing<br><br>None<br><br>73.17% of total claim but 100% of secured portion of claim. |
| | | | | Treatment of Lien | Real Prop being sold with net proceeds of $684,200 being paid to creditor upon close of escrow. |

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

13

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692  FAX: (626) 359-3728

| Secured claim of: Wyndham Vacation Ownership | No | No | Payment interval: | Monthly |
|---|---|---|---|---|
| | | | Payment amount | $380.58 |
| Collateral description: Timeshare interest in Grand Desert Resort | | | Balloon payment | None |
| | | | Begin date | Effective date |
| Collateral value: $20,000.00 | | | End date | 1/1/15 |
| | | | Interest rate: | 9.90% |
| Priority of security int. Purchase Money Security Interest | | | Total payout | 100% |
| | | | Treatment of Lien | unimpaired |
| Principal owed: $17,911.28 | | | | |
| Pre-pet. arrears: None | | | | |
| Post-pet. arrears None | | | | |
| Total claim amount: $18,032.28 | | | | |

2.    Classes of Priority Unsecured Claims:

Certain priority claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes. These types of claims are entitled to priority treatment as follows: the Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim. However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claims.

The following chart lists all classes containing Debtors' §507(a)(3), (4), (5), (6), and (7) priority unsecured claims and their treatment under this Plan (see Exhibit G for more detailed information about each priority unsecured claim):

| CLASS | DESCRIPTION | IMPAIRED | TREATMENT |
|---|---|---|---|
| 2 | None | Not Applicable | Not Applicable |

14

3.      Class of General Unsecured Claims:

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). The Debtors' received a discharge in their Chapter 7 case on December 10, 2009. The effect of such discharge was to eliminate any personal liability on any debt which existed at the time of their Chapter 7 filing. All debt existing in the Debtors' Chapter 11 case was included in their Chapter 7 case and was thus discharged. no new debt was incurred between the Chapter 7 filing and this immediate filing, thus all debt has been discharged, leaving no unsecured debt to be paid. The following chart identifies this Plan's treatment of the class containing all of Debtors' general unsecured claims:

| CLASS | DESCRIPTION | IMPAIRED | TREATMENT | |
|-------|-------------|----------|-----------|--|
| 3 | None | Not Applicable | Not Applicable | Not Applicable |

4.      Class(es) of Interest Holders:

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. If the Debtor is a partnership, the interest holders include both general and limited partners. If the Debtor is an individual, the Debtor is the interest holder. The following chart identifies this Plan's treatment of the class of interest holders:

| CLASS | DESCRIPTION | IMPAIRED | TREATMENT |
|-------|-------------|----------|-----------|
| 4 | Interest holders | Not Applicable | Not Applicable |

D.      Means of Effectuating the Plan

1.      Funding for the Plan:

The Plan will be funded from the sale of the real property located at 1224 Corson Street, Pasadena, California, the collection of rents from the real property located at 2020 Newport Avenue, Pasadena, California and the post-confirmation earnings of the Debtors.

///

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3892  FAX: (626) 359-3728

Disclosure Statement

2.      Post-confirmation Management:

Post-confirmation Management will be handled by the Debtors, James N. Knowles and Sara Knowles.  They will maintain the Newport Property, collect rents, tender payments and, if it becomes necessary, retain a real estate broker to sell the real property.  For their services, the Debtors will not receive any regular compensation, however, to the extent any monies exist after the payment of all claims, the Debtors will retain all net proceeds.

3.      Disbursing Agent:

The Debtors shall act shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no compensation for distribution services rendered and expenses incurred pursuant to the Plan.

**E.    Risk Factors**

The proposed Plan is a combination liquidation and reorganization plan, meaning that the Debtors intend to sell one or more of their investment properties and fund the balance of the Plan from post confirmation earnings.

The Plan has the following risks:

Although the Debtors have found a buyer for the Corson Property, there is the possibility that the Buyer defaults and escrow does not close.  Under those circumstances, GMAC will, most likely foreclose on the Corson Street property, eliminating the asset from the estate.

In the event the Debtors elect to sell the Newport Property, there is the possibility that the real estate market will not have recovered and no buyer will be found.  Even if a buyer is found, there is the possibility that buyer defaults and escrow does not close.  Under those circumstances, GMAC will, most likely foreclose on the Newport Property, eliminating the asset from the estate

Since much of this Plan will be funded from post-confirmation earnings, the Debtors may lose their jobs or have insufficient income to fund the Plan.

Considering the fact that the Debtors have already been discharged in their Chapter 7 case and have not incurred any debt since then, this case will not be converted and, in the event of a default, will be dismissed.

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692  FAX: (626) 359-3728

16

**F.    Other Provisions of the Plan**

    **1.    Executory Contracts and Unexpired Leases:**

    **a.    Assumptions:**

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan:    None

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a lease or contract to be assumed and you object to the assumption of your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.B.3. of this document for the specific date.

    **b.    Rejections**

On the Effective Date, the following executory contracts and unexpired leases will be rejected:    None.

The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section I.B.3. of this document for the specific date.

THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS THIRTY (30) DAYS FROM THE EFFECTIVE DATE OF THE PLAN.

Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

    **2.    Changes in Rates Subject to Regulatory Commission Approval**

These Debtors <u>are not</u> subject to governmental regulatory commission approval of their rates.

    **3.    Retention of Jurisdiction.**

The Court will retain jurisdiction to the extent provided by law.

///

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3892  FAX: (626) 359-3728

Disclosure Statement

**G.    Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS.  The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtors. The Proponents CANNOT and DO NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtors' tax liability.   The Debtors do not anticipate any adverse tax consequences from this Plan of Reorganization.  The sale of the Corson property is at a significant loss and therefore should not generate any income.  The Newport and Laun properties will be retained, again, no substantial income tax consequences will be experienced.

Should the Newport property be sole, again it will be sold at a substantial loss, thus generating no income tax consequences.

**IV.**

**CONFIRMATION REQUIREMENTS AND PROCEDURES**

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.   The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible. These requirements are not the only requirements for confirmation.

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

18

**A.   Who May Vote or Object**

    **1.   Who May Object to Confirmation of the Plan**

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

    **2.   Who May Vote to Accept/Reject the Plan**

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

        **a.   What Is an Allowed Claim/Interest**

As noted above, a creditor or interest holder must first have an <u>allowed claim or interest</u> to have the right to vote. Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim. When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE IS            . A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Consult Exhibits F through L to see how the Proponent has characterized your claim or interest.

        **b.   What Is an Impaired Claim/Interest**

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is <u>impaired</u> under the Plan. A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class. For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes that classes 2 and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

19

Proponent believes that classes 1, 3 and 5 are unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.   Who is <u>Not</u> Entitled to Vote

The following four types of claims are <u>not</u> entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.   Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

### 5.   Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section IV.A.8.

### 6.   Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan. A class of interests is considered to have accepted the Plan when at least two-

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3892 FAX: (626) 359-3728

20

1  thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the
2  Plan.

3  **7.    Treatment of Nonaccepting Classes**

4  As noted above, even if <u>all</u> impaired classes do not accept the proposed Plan, the Court may
5  nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the
6  Code. The process by which nonaccepting classes are forced to be bound by the terms of the Plan is
7  commonly referred to as "cramdown." The Code allows the Plan to be "crammed down" on
8  nonaccepting classes of claims or interests if it meets all consensual requirements except the voting
9  requirements of 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and
10  equitable" toward each impaired class that has not voted to accept the Plan as referred to in 11
11  U.S.C. § 1129(b) and applicable case law.

12  **8.    Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

13  The party proposing this Plan will ask <u>the Court</u> to confirm this Plan by cramdown on
14  impaired classes 2 and 4 if any of these classes do not vote to accept the Plan.

15  Please note that the proposed Plan treatment described by this Disclosure Statement <u>cannot</u>
16  be crammed down on the following classes: None. AS A RESULT, IF ANY OF THESE CLASSES
17  DOES <u>NOT</u> VOTE TO ACCEPT THE PLAN, THE PLAN WILL <u>NOT</u> BE CONFIRMED.

18  **B.    Liquidation Analysis**

19  Another confirmation requirement is the "Best Interest Test", which requires a liquidation
20  analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that
21  claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must
22  receive or retain under the Plan property of a value not less than the amount that such holder would
23  receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

24  In a Chapter 7 case, the Debtor's assets are usually sold by a Chapter 7 trustee. Secured
25  creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien.
26  Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales
27  proceeds, according to their rights to priority. Unsecured creditors with the same priority share in
28  proportion to the amount of their allowed claim in relationship to the amount of total allowed

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692  FAX: (626) 359-3728

21

1  unsecured claims. Finally, interest holders receive the balance that remains after all creditors are

2  paid, if any.

3       For the Court to be able to confirm this Plan, the Court must find that all creditors and

4  interest holders who do not accept the Plan will receive at least as much under the Plan as such

5  holders would receive under a Chapter 7 liquidation.   The Plan Proponent maintains that this

6  requirement is met here for the following reasons: The real property owned by the Debtors is over-

7  encumbered, thus no equity exists.  The remaining assets of the Debtors are either of nominal value

8  (and thus would be abandoned by a Trustee) or are exempt from Chapter 7 administration.

9       Below is a demonstration, in balance sheet format, that all creditors and interest holders will

10  receive at least as much under the Plan as such creditor or interest holder would receive under a

11  Chapter 7 liquidation.

| ASSETS VALUE AT LIQUIDATION VALUES: | |
| --- | --- |
| **CURRENT ASSETS** | |
| a.   Cash on hand | $50,000.00 |
| b.   Accounts receivable | $0.00 |
| c.   Inventories | $0.00 |
| TOTAL CURRENT ASSETS | $50,000.00 |
| **FIXED ASSETS** | |
| a.   Furniture, Furnishings & Wearing Apparel | $3,500.00 |
| b.   Jewelry & camera equipment | $2,800.00 |
| c.   Automobiles | $12,500.00 |
| d.   Real Property | $1,365,000.00 |
| TOTAL FIXED ASSETS | $1,383,800.00 |
| **OTHER ASSETS** | |
| a.   Tax Returns | $7,500.00 |
| b.   Other intangibles | $0.00 |
| TOTAL OTHER ASSETS | $7,500.00 |
| **TOTAL ASSETS AT LIQUIDATION VALUE** | **$1,441,300.00** |
| **Less:** | |
| Secured creditor's recovery | $1,737,385.00 |
| **Less:** | |

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3892 FAX: (626) 359-3728

| Chapter 7 trustee fees and expenses | $85,050.00 |
|---|---|
| **Less:** Chapter 11 administrative expenses | $42,000.00 |
| **Less:** Priority claims, excluding administrative expense claims | $0.00 |
| **Less:** Debtor's claimed exemptions | $56,600.00 ========= |
| (1) Balance for unsecured claims | $0.00 |
| (2) Total amt of unsecured claims | $0.00 |

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WOULD RECEIVE OR RETAIN IN A CH. 7 LIQUIDATION: 0.00%.**

**% OF THEIR CLAIMS WHICH UNSECURED CREDITORS WILL RECEIVE OR RETAIN UNDER THIS PLAN: 100%.**

Below is a demonstration, in tabular format, that all creditors and interest holders will receive at least as much under the Plan as such creditor or holder would receive under a Chapter 7 liquidation.

| CLAIMS & CLASSES | PAYOUT PERCENTAGE UNDER THE PLAN | PAYOUT PERCENTAGE IN CHAPTER 7 LIQUIDATION |
|---|---|---|
| Administrative Claims | 100.00% | 0.00% |
| Priority Tax Claims | 100.00% | 0.00% |
| Class 1 - Secured Creditors | 100.00% | 50.00% |
| Class 2 - | 100.00% | 0.00% |
| Class 3 - | 100.00% | 0.00% |
| Class 4 - | 100.00% | 0.00% |

C.     Feasibility

Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

Disclosure Statement

There are at least two important aspects of a feasibility analysis. The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses which are entitled to be paid on such date. The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

| Cash Debtor will have on hand by Effective Date | $50,000.00 |
|---|---|
| **To Pay:** Administrative claims | $15,000.00 |
|  | $650.00 |
| **To Pay:** Statutory costs & charges | $0.00 |
| **To Pay:** Other Plan Payments due on Effective Date | $0.00 |
| Balance after paying these amounts | $34,250.00 |

The sources of the cash Debtor will have on hand by the Effective Date, as shown above are:

| $62,464.57 | Cash in DIP Account now |
|---|---|
| +10,000.00 | Additional cash DIP will accumulate fromnet earnings between now and Effective Date |
| +0.00 | Borrowing |
| +0.00 | Capital Contributions |
| + 0.00 | Other |
| $72,464.57 | **Total**[91] |

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments. The Proponents have provided financial statements which include both historical and projected financial information. Please refer to Exhibit B for the relevant financial statements. YOU ARE ADVISED TO CONSULT WITH YOUR ACCOUNTANT OR FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS PERTAINING TO THESE FINANCIAL STATEMENTS.

In summary, the Plan proposes to pay $4,537.50 each month. As Debtors' financial projections demonstrate, Debtors swill have an average cash flow, after paying living expenses and

MICHAEL A. CISNEROS, Attorney at Law
50 West Lemon Avenue, Suite 12
Monrovia, California 91016
(626) 359-3692 FAX: (626) 359-3728

1  post-confirmation taxes, of $7,000.00 each month for the life of the Plan. The final Plan payment is

2  expected to be paid on September 30, 2040. The Plan Proponents contend that Debtors' financial

3  projections are feasible.  As shown by Debtors' historical financial statements, Debtors' average

4  $9,800.00 cash flow.  After paying living expenses during this bankruptcy case the Debtors average

5  $7,000.00 net cash flow.  After paying secured debt, there is approximately $1,000.00 remaining.

6  Furthermore, as discussed earlier in the Disclosure Statement, Debtors have implemented procedures

7  to resolve their cash flow problems.

**V.**

**EFFECT OF CONFIRMATION OF PLAN**

10  A.     No Discharge

11          Debtors will not receive any discharge in this case because the Debtors obtained a discharge

12  on December 19, 2009, after the filing of their Chapter 7 Petition.

13  B.     Revesting of Property in the Debtor

14          Except as provided in Section V.E., and except as provided elsewhere in the Plan, the

15  confirmation of the Plan revests all of the property of the estate in the Debtor.

16  C.     Modification of Plan

17          The Proponent of the Plan may modify the Plan at any time before confirmation.  However,

18  the Court may require a new disclosure statement and/or revoting on the Plan.

19          The Proponent of the Plan may also seek to modify the Plan at any time after confirmation

20  only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the

21  proposed modifications after notice and a hearing.

22  D.     Post-Confirmation Status Report

23          Within 120 days of the entry of the order confirming the Plan, Plan Proponent shall file a

24  status report with the Court explaining what progress has been made toward consummation of the

25  confirmed Plan.  The status report shall be served on the United States Trustee, the twenty largest

26  unsecured creditors, and those parties who have requested special notice. Further status reports shall

27  be filed every 120 days and served on the same entities.

28  ///

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692 FAX: (626) 359-3728

25

Disclosure Statement

**E.     Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. §1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. §1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. §1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**F.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders, the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

**G.     Final Decree**

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Date: July 23, 2010

MICHAEL A. CISNEROS
Attorney at Law

By:_____
Michael Anthony Cisneros
Attorneys for Debtors and Debtors-in-Possession
James N. Knowles and Sara Knowles

MICHAEL A. CISNEROS, Attorney at Law
50 WEST LEMON AVENUE, SUITE 12
MONROVIA, CALIFORNIA 91016
(626) 359-3692  FAX: (626) 359-3728